**Gloria Mendez vda. de PEREZ, individually and as next friend of her minor children, Glorimar, Sauhdi, Adelisa and Nirma Perez, Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee. (Two Cases)**

Nos. 79–1614, 80–2208.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 1984.

Decided June 26, 1984.

William P. Bernton, Washington, D.C., for appellants in Nos. 79–1614 and 80–2208.

Gregory M. Christopher, Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on briefs for appellee. Robert R. Bruce, James R. Jamison, Jr., and Keith H. Fagan, Attys. F.C.C., Washington, D.C., also entered appearances for appellee.

Before EDWARDS and SCALIA, Circuit Judges, and GESELL,* United States District Judge for the United States District Court for the District of Columbia.

Opinion for the Court by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

This case involves appeals taken under 47 U.S.C. § 402(b)(6) (1976) by the owner of a Puerto Rican radio station from the Federal Communications Commission's decision to grant a construction permit to a potential competitor. Appellant claims that the permit was granted in violation of the FCC's regulations.

## I

The present proceeding began with two competing applications filed with the FCC by Radio Lares and Lares Broadcasters for a construction permit to bring a first radio service to Lares, Puerto Rico, at a frequency of 1200 kHz. Appellant Gloria Mendez vda. de Perez [1] operates a radio station in San Sebastian, Puerto Rico, eight miles from Lares, and would face competition for audience and revenues from the new station. Appellant filed objections to the Radio Lares application on the ground that grant of the license would lead to inefficient use of the airwaves, in violation of 47 C.F.R. § 73.37(b)(2) (1983),[2] because the Lares station would interfere with and receive interference from Dominican Republic radio station HIBS, which also operated at the 1200 kHz frequency.

The Commission rejected appellant's objections on the ground that the interference from HIBS would not reduce the proposed station's service area to an unsatisfactory level, and it set Radio Lares' and Lares Broadcasters' applications for comparative hearing. *Radio Lares*, Docket No. 20968 (F.C.C. Nov. 4, 1976). Appellant sought intervention in that hearing, and reconsideration of and a full hearing on her objections. The Commission granted intervention but refused to designate appellant's objections for hearing or to reconsider them. *Radio Lares*, 63 F.C.C.2d 305 (1977).

By the time the comparative hearing was scheduled to be held, it had become unnecessary, because the two applicants had agreed to consolidate and form a single new applicant, Lares Broadcasting Corporation. The administrative law judge found that this left only two issues to be determined: First, the Commission order refusing to set the interference issue for hearing, but permitting appellant to intervene, had stated its reasons as follows:

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

1. Perez is the successor in interest to Pepino Broadcasters, Inc., the original opponent to the grant of this license. For the sake of simplicity, we will refer to both as appellant.

2. This regulation states:

An application for a new daytime station ... may be granted ... where the applicant station is or would be ... the first AM broadcast facility in a community of 25,000 or more population wholly or partly within an urbanized area ... provided, that:

⋅   ⋅   ⋅   ⋅   ⋅

(2) No overlap would occur between the 1 mV/m contour of the proposed facilities and the 0.05 mV/m contour of any co-channel station.

47 C.F.R. § 73.37(b)(2) (1983).

[W]e are confident that the interference problems can be resolved through negotiations without requiring consideration of issues which are only tangential and which circumstances indicate will likely be mooted. Moreover, even if negotiations with the government of the Dominican Republic fail to resolve all interference problems, a determination can then be made, in light of the existing situation, whether overriding public interest considerations nevertheless justify favorable action ... or whether some revision of the proposal is required.... This is not to say, however, that the questions raised by [appellant] will not be considered before a final grant is made if a significant violation of Section 73.37(b)(2) is presented, despite the negotiations and possible modification of the proposed facilities. We only conclude that no useful purpose would be served by adding the issues requested by [appellant] at this stage of the proceeding.

*Radio Lares, supra,* 63 F.C.C.2d at 307. The ALJ was uncertain whether the Commission had intended to rule out consideration of the interference issue altogether at the construction permit stage, or rather to require denial of a construction permit until completion of negotiations with the Dominican Republic. He therefore certified that question to the Commission. *Radio Lares,* Docket No. 20968, slip op. at 4–5 (F.C.C. July 7, 1977) ("ALJ mem. op. & order").

The second issue involved another section of the Commission's rules, 47 C.F.R. § 73.35 (1983), which prohibits the granting of a license for an AM station to a party any of whose stockholders would thereby acquire a direct or indirect interest in three broadcast stations, any two of which are within 100 miles of the third and any of whose primary service contours overlap.[3] Lares Broadcasting appeared to come within that section, because two of its stockholders owned interests in the licensee corporations of an AM station in Caguas, Puerto Rico, and an FM station in San Juan, Puerto Rico. The proposed Lares station, the Caguas station, and the San Juan station were all within 100 miles of each other, and there would be primary service overlap between the proposed Lares station and the San Juan FM station. Application of the rule, however, is subject to an exception: AM–FM combinations licensed to the same market count as one station. *Amendment of Sections 73.35, etc.,* Docket No. 20548, 63 F.C.C.2d 824, 829 (1977) (first report & order). Lares Broadcasting argued that it came within that exception. Since the San Juan station also provided city grade service to Caguas and was permitted to identify itself as San Juan-Caguas, Lares Broadcasting contended that San Juan and Caguas should be treated as one market, and the San Juan and Caguas stations should count as an AM–FM combination licensed to the same market. In that case the Lares Broadcasting stockholders would own interests in only two stations within 100 miles of each other and grant of a license would not be in violation of the rule. Uncertain of the scope of the "same market" exception, the ALJ certified that issue to the Commission as well. ALJ mem. op. & order, *supra,* slip op. at 3–4.

No license for an AM broadcast station shall be granted to any party (including all parties under common control) if such party, or any stockholder, officer or director of such party, directly or indirectly owns, operates, controls, or has any interest in, or is an officer or director of any other AM broadcast station if the grant of such license would result in a concentration of control of AM broadcasting in a manner inconsistent with the public interest, convenience, or necessity. The FCC however, will in any event consider that there would be such a concentration of control contrary to the public interest, convenience or necessity for any party or any of its stockholders, officers, or directors to have a direct or indirect interest in, or be stockholders, officers, or directors of, more than seven AM broadcast stations, or of 3 broadcast stations in one or several services, where any two are within 100 miles of the third (measured city to city), if there is primary service contour overlap of any of the stations.
47 C.F.R. § 73.35(b)(1).

The Commission issued its first ruling on the certified questions on September 28, 1978. As to the interference issue, the Commission held that grant of the Lares Broadcasting application need not await negotiations with the Dominican Republic. It thought it could legitimately disregard interference to HIBS because that station was using the 1200 kHz frequency in violation of the North American Regional Broadcasting Agreement (NARBA), which gave the United States priority use of that frequency and required the Dominican Republic to give the Commission notification of HIBS's operation. As to interference from HIBS, it reasoned that preliminary engineering studies suggested that any potential interference could be eliminated through negotiation, and that the nature of the overlap assured that in any case the proposed service area would not be reduced to an unsatisfactory level. It stated that public interest factors therefore already existed warranting a waiver of § 73.37(b) regardless of the outcome of negotiations. *Lares Broadcasting Corp.*, 69 F.C.C.2d 841, 844–45 (1978). The Commission did not take any evidence on the extent of the interference before reaching this conclusion, and reached it in the face of contentions by appellant that interference received by the Lares station would affect 33% of the population and 35% of the service area.

The Commission also ruled in favor of Lares Broadcasting on the ownership issue. After the ALJ had issued his opinion certifying the two questions to the Commission, on December 9, 1977, in another proceeding, the Commission had adopted a definition of market for purposes of the AM–FM combination exception to § 73.-35(b). It had decided that it would count AM–FM combinations as one station if the communities of license were within 15 miles of each other. The points of measurement for the communities were to be the reference points listed in the Index to the National Atlas of the United States of America, United States Department of the Interior, Geological Survey, Washington, D.C., 1970, with future editions supersed-

ing. If a community of license was not referenced by the Atlas, its point of reference would be the main post office until it was referenced. *Amendment of Sections 73.35, etc.*, Docket No. 20548, 67 F.C.C.2d 54, 57–58 (1977) (mem. op. & order).

According to this definition, the San Juan and Caguas stations would not be in the same market, because the reference points of the two communities in the Index to the National Atlas were more than 15 miles apart. But after release of the new definition of market, the Commission's Broadcast Bureau requested the Interior Department to check San Juan's position as listed in the National Atlas Index. By letter dated March 28, 1978, the Interior Department concluded that San Juan had a newer, larger, and more centrally located post office than the one used in compiling the Index, which would be a more appropriate point of reference. If that new reference point were adopted, San Juan and Caguas would be within 15 miles of each other, and their stations would be in the same market. Based on this information, the Commission concluded that the Caguas–San Juan AM–FM combination should be treated as licensed to the same market. It therefore held that grant of a construction permit to Lares Broadcasting would not violate § 73.-35(b). *Lares Broadcasting Corp., supra,* 69 F.C.C.2d at 841–44.

After the Commission denied reconsideration and the Commission Review Board refused appeal, *Lares Broadcasting Corp.*, 45 Rad.Reg.2d (P & F) 967 (Rev.Bd. May 14, 1979), appellant filed her first appeal, No. 79–1614, with this court. The Commission requested a remand on the interference issue, out of concern that the rationale for its decision on that point was not likely to withstand appellate review. We granted the motion. *Pepino Broadcasters, Inc. v. FCC*, No. 79–1614 (D.C.Cir. Dec. 19, 1979) (Order). On remand, the Commission reaffirmed its previous decision on the ground that HIBS, the Dominican station, had not given the Commission prior notification of its operation, as required by NARBA, and that it would therefore be inappropriate to

take into account any interference received or caused by that station in deciding whether to grant Lares Broadcasting a license. *Lares Broadcasting Corp.*, 48 Rad.Reg.2d (P & F) 353 (F.C.C. Sept. 22, 1980).

Appellant took a second appeal from that order, No. 80–2208, which was consolidated with No. 79–1614. After briefing and before argument, however, the Commission discovered evidence that the Dominican Republic had actually notified it of the operation of HIBS. It therefore requested and was granted a second remand for the limited purpose of considering the effect of this development. *Pepino Broadcasters, Inc. v. FCC*, No. 79–1614 (D.C.Cir. July 28, 1981) (Order). Appellant sought to have the remand enlarged to determine the extent of the interference HIBS would receive and generate, as well as the propriety of the Commission's method of measuring the distance between Caguas and San Juan, but we refused this request. *Id.*

On this second remand, the Commission again reaffirmed its original decision on the interference issue. Upon examining its records further, it concluded that HIBS was operating in violation of NARBA, as it had originally believed. The violation was twofold: First, the Dominican Republic's notice was not adequate under NARBA, because it did not include sufficient information. Second, HIBS was operating on the 1200 kHz frequency, which was a clear channel assigned by NARBA to the United States. The Commission had objected to

HIBS's signal's impermissibly penetrating the U.S. border, in violation of NARBA, and the Dominican Republic had never responded. *Lares Broadcasting Corp.*, 53 Rad.Reg.2d (P & F) 1715, 1719–20 (F.C.C. May 20, 1983).

Under the Commission's rationale on the first remand, the Commission would have needed to proceed no further. But an important development had occurred between its decisions on the first and the second remand, whose effect the Commission felt obliged to assess.[4] The United States, the Dominican Republic and other countries had reached tentative agreement on a new treaty to replace NARBA. That treaty, known as the Region II agreement, contained two lists: List A, on which were placed stations "purportedly receiving or causing no unacceptable interference"; and List B, a list of stations with interference problems. *Id.* at 1720. List B stations were further divided into planned stations and operational stations. HIBS was put on List A; the proposed Lares station was put on List B as an operational station.[5] Since the new agreement thus appeared to grandfather HIBS, the issue arose whether the Commission could still validly disregard interference received or caused by the Dominican station in deciding whether to grant Lares Broadcasting a permit.

The Commission concluded that it could, since Lists A and B were tentative and subject to verification and challenge. It

4. Appellant objects to the Commission's examination of the effect of post-remand developments on the ground that it was outside the scope of the remand. We find that the Commission acted entirely properly. These developments were intimately connected with the question remanded, and any other course would probably have required yet another remand.

5. The Lares station was originally listed as a planned station. This designation might have prevented it from being put into operation, since the Region II Agreement prohibits putting a planned station on List B into operation if it would cause unaccepted interference to a station which was in operation as of January 1, 1982. During the Region II conference, however, Lares' status was changed to operational, thus eliminating this problem. *Lares Broadcast-*

*ing Corp., supra,* 53 Rad.Reg.2d (P & F) at 1721 n. 38.

Appellant objects that this designation was improper, because the Lares Station was in fact not broadcasting. But the designation was accepted by the Dominican Republic, and is part of the tentative Agreement. So long as the Commission is not in breach of its obligations under Region II, the basis for the provisions of that Agreement is of no concern to us. Appellant's objection could be understood as a contention that the fictionality of Lares' operational status weakens the Commission's negotiating position vis-a-vis the Dominican Republic. But as we discuss below, we believe the Commission's evaluation of the strength of its position is entitled to great deference, which an objection like this one is hardly sufficient to overcome.

still believed that the interference problems could be greatly ameliorated by negotiations, and it did not wish to delay grant of the construction permit until completion of those negotiations because it felt that its negotiating position would be improved if there was an actual, rather than a proposed Lares station to contend with. It therefore concluded that waiver of § 73.37(b)(2) remained appropriate. *Id.* at 1720–22.

Because of the limited nature of the second remand and the continuing jurisdiction of this court, no separate appeal was taken from that decision of the Commission. Appellant now renews her claims that the Commission impermissibly waived § 73.-37(b)(2) of its rules regarding interference, and impermissibly departed from its prescribed method of determining points of reference for communities under § 73.-35(b).

## II

Section 73.37(b)(2) is an allocations tool designed to ensure proper spacing of radio stations in order to minimize interference and promote efficient use of broadcast frequencies. *See, e.g., The Mountainaire Corp.,* 70 F.C.C.2d 674, 675–76 (1979). Lares Broadcasting acknowledges that if its application is granted, there will be prohibited signal overlap.

■ The Commission's practice is to require an applicant seeking a waiver of this regulation to show "unique and compelling circumstances" justifying an exemption. *Norman Broadcasting Co.,* 56 F.C.C.2d 1046, 1048 (Rev.Bd.1975); *B. & K. Broadcasting Co.,* 2 F.C.C.2d 21 (1965). As our foregoing account demonstrates, in the numerous stages of this proceeding the Commission has successively adopted and abandoned various questionable justifications

for the waiver.[6] That is hardly likely to inspire confidence in the Commission's action. In mitigation, however, it may be noted that the desire to avoid domination of a domestic spectrum management decision by an unlawful and potentially eliminable foreign signal—which underlies the Commission's ultimate decision—appears as a preoccupying concern throughout. And it may be understandable that the Commission was reluctant, until the very last stages, to rely flatly upon and speak bluntly about the strategies of international negotiations. In any case, the fundamental justification for the waiver expressed in the Commission's final order is that it will ultimately produce satisfactory service to the licensee's area of broadcast coverage, and at the same time maximize available United States spectrum space, by enabling effective use of international negotiations to eliminate foreign-signal interference. That course of action is not arbitrary or capricious. 5 U.S.C. § 706(2) (1982).

■ Crucial to this conclusion is the reasonableness of the Commission's belief that it can substantially eliminate interference between the Lares station and HIBS by negotiations, and that it will be in a stronger negotiating position if the Lares station is already in operation when the negotiations are conducted. Appellant challenges these claims. She argues that since the Commission has found that interference to HIBS from the Lares station will be minimal, its operation would create no further significant incentive for the Dominicans to be accommodating. The Commission responds that, given the number of issues remaining to be resolved in connection with the Region II Agreement, the Lares matter will only reach the agenda if it involves eliminating interference with an existing

---

6. Even in its final opinion it relied upon one ground that we consider utterly insubstantial. The Commission asserted that the goal of bringing the first radio service to Lares justifies the waiver. *Lares Broadcasting Corp., supra,* 53 Rad.Reg.2d (P & F) at 1722. This justification runs up against the fact that the regulation, which is a relaxation of the Commission's ordinary interference rules, only applies when an applicant seeks to provide a first service to a community. Thus, if first service justifies a waiver, the entire regulation becomes a nullity. Since we regard the Commission's principal justification, which we validate below, to have been *independently determinative,* reliance upon this erroneous ground does not require remand for reconsideration.

radio station rather than freeing a channel for a planned one. Appellant questions the effectiveness of negotiations on the ground that since the Region II Agreement grandfathers HIBS, the Commission has no basis for objecting to its operation. The Commission responds that the assignment of stations to Lists A and B is tentative, and expresses confidence that in light of the actual signal interference that exists the status of HIBS will be altered in subsequent negotiations. The Commission's position on both these points is in the nature of a prediction, and is therefore a matter of judgment entitled to great deference. *See FCC v. WNCN Listeners Guild,* 450 U.S. 582, 594–95, 101 S.Ct. 1266, 1274, 67 L.Ed.2d 521 (1981). We cannot find it to be arbitrary.

■ Moreover, we find that the need to preserve United States claims to use of the 1200 kHz frequency, which the Commission believes can best be done by grant of a permit to Lares Broadcasting, can justifiably be regarded as "unique and compelling circumstances" causing waiver of § 73.37(b)(2) to be in the public interest. Our review of the Commission's public interest determinations is ordinarily quite limited, *see id.* at 593–94, 101 S.Ct. at 1273–74; and should be even more so here, where the determination is based on considerations of foreign policy, an area in which executive decisionmaking is least susceptible to court scrutiny, *see Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 436, 92 L.Ed. 568 (1948).

Given the basis upon which the Commission granted the waiver and which we find to be adequate, applicant's objection to the Commission's failure to hold a hearing on, or to consider, the precise extent of signal interference from HIBS is no longer relevant. Whatever the degree of that interference might be, the Commission has expressed its judgment, which we have no reason to believe arbitrary, that the problem can be solved by negotiation.

We therefore uphold the Commission's decision to waive the interference rule.

## III

We can dispose of appellant's second contention with little difficulty. Appellant's claim is that grant of the construction permit violated the concentration-of-ownership rule set out in 47 C.F.R. § 73.35, because the Commission did not adopt the reference point for San Juan in the National Atlas, as its decision in Docket No. 20548 indicated that it should, but instead accepted a more accurate, updated reference point provided by letter from the Interior Department.

■ The Commission's specified means of determining reference points for purposes of applying the "same market" exception to § 73.35(b)(1) is a rule of convenience. Moreover it is not, at the initial licensing stage at least, a matter around which any conceivable reliance interest can arise—unless it be the reliance of a license applicant who may acquire an interest in a station and expend the funds necessary to prepare a filing on the basis of the National Atlas. The latter reliance cannot be disappointed by permitting a departure from the rule in *favor* of an applicant. For such a purpose, therefore, it would be absurd not to permit the Commission, *if it so desires,* to use more recent and accurate information in making the "same market" determination. Even where appreciable reliance interests were seemingly frustrated, we have not only permitted, but even compelled the Commission to depart from what we regarded as a rule of convenience in order to use more current data. *KCST-TV, Inc. v. FCC,* 699 F.2d 1185 (D.C.Cir. 1983).

\*    \*    \*    \*    \*    \*

For the reasons stated, we affirm the Commission's grant of a construction permit to Lares Broadcasting.